**Frank D. FOURNIER, Plaintiff,**

v.

**Martin JOYCE, Mark Peterson, Michael Chitwood, Kenneth Loveitt, Allen Wright, and Michael Roach, Defendants.**

**No. 89–0246–P.**

United States District Court,
D. Maine.

Dec. 14, 1990.

Frank D. Fournier, Maine State Prison, Thomaston, Me., for plaintiff.

John E. Sedgewick, Berman Simmons, Lewiston, Me., for defendants Chitwood and Loveitt.

Diane Sleek, Asst. Atty. Gen., Augusta, Me., for defendants Wright and Roach.

William R. Fisher, Monaghan Leahy, Portland, Me., for defendants Joyce and Patterson.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, Chief Judge.

This matter comes before the Court on Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons discussed below, the Motion will be granted.

## I. PROCEDURAL HISTORY AND FACTS

Plaintiff Frank Fournier is a prisoner in Maine State Prison in Thomaston, Maine.

Fournier filed a Complaint[1] with this Court on October 10, 1989 claiming that his civil rights were violated while he was being arrested and seeking declaratory and injunctive relief, as well as damages. Plaintiff's Complaint alleges violations of his constitutional procedural due process rights, his constitutional substantive due process right "to be free of unjustified and excessive use of force," and his right of access to the court guaranteed by the First and Fourteenth Amendments to the United States Constitution. In addition, Plaintiff asserts that a tortious assault was perpetrated against him in violation of Maine law.

Six defendants are named in the Complaint. Defendants Allen Wright and Michael Roach are probation officers with the Maine Department of Corrections. Defendant Michael Chitwood is Portland, Maine's Chief of Police. Defendant Kenneth Loveitt is a detective with the Portland Police Department. Defendant Martin Joyce is the Sheriff of Cumberland County, Maine, and Defendant Mark Peterson is a deputy sheriff in the Cumberland County Sheriff's Department.

Defendants filed a Motion for Summary Judgment with this Court on September 25, 1990 along with a separate Statement of Material Facts, with record citations, and a Memorandum of Law, as required by the local rules of this Court. *See* Local Rule 19(a), (b). On the same day, Plaintiff filed a Motion to Withdraw Without Prejudice. Defendants objected to Plaintiff's Motion to Withdraw, and this Court denied Plaintiff's Motion on October 22, 1990. Plaintiff has not responded to Defendants' Motion for Summary Judgment.

■ Failure to file a written objection to any motion within ten days after the filing of that motion generally constitutes a waiver of objections to the motion by the non-moving party. Local Rule 19(c).[2] It is well

---

1. Plaintiff is a *pro se* litigant. He filed a Form Complaint which included civil rights actions under 42 U.S.C. section 1983 with this Court on October 10, 1989. Form Complaint (Docket No. 3). Plaintiff filed on the same day a more detailed Civil Rights Complaint which included section 1983 claims on several constitutional grounds and an alleged violation of state law. *See* Civil Rights Complaint with a Jury Demand (Docket No. 4).

2. The rule reads in pertinent part:

established in this district, however, that Federal Rule of Civil Procedure 56 [3] requires the Court to examine the merits of a motion for summary judgment even though a nonmoving party fails to object as required by Local Rule 19(c). *Gagne v. Carl Bauer Schraubenfabrick*, 595 F.Supp. 1081, 1084 (D.Me.1984); *McDermott v. Lehman*, 594 F.Supp. 1315 (D.Me.1984). Thus, a party who fails to object to a motion for summary judgment within ten days is deemed to have waived objection *to the moving party's statement of facts* to the extent it is supported by appropriate record citations. *Lehman*, 594 F.Supp. at 1321. This outcome is consistent with Local Rule 19(b), which establishes that

> [a]ll material facts set forth in the statement required to be served by the moving party, if supported by appropriate record citations, will be deemed to be admitted unless properly controverted by the statement required to be served upon the opposing party.

Local Rule 19(b).

Thus, since Plaintiff has not responded to Defendants' summary judgment motion, the facts set forth in Defendants' Statement of Material Facts, which are detailed

> Unless within ten days after the filing of a motion the opposing party files a written objection thereto, he shall be deemed to have waived objection.
> Local Rule 19(c).

**3.** The relevant text is as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
> Fed.R.Civ.Pro. 56(c).

**4.** Local Rule 19(a) requires that "[a] party filing a motion shall file, in duplicate, with the motion, a memorandum of law, including citations and supporting authorities." Neither party has sufficiently conformed to this rule. As already noted, *Plaintiff filed no papers in response to* this summary judgment motion. Defendants filed a Memorandum of Law which cited only one authority on the issue of the potential section 1983 liability of Defendants Wright, Roach, Loveitt, and Peterson. The cited authority, *Thompson v. City of Portland,* 620 F.Supp. 482, 486 (D.Me.1985), was reversed and remanded by the Court of Appeals for the First Circuit.

below, will serve as the factual record for deciding this Motion.[4] The burden remains on the moving party to adduce uncontested facts sufficient to "entitle the moving party to judgment as a matter of law." *McDermott*, 594 F.Supp. at 1321. *See also Gagne*, 595 F.Supp. at 1084. Should the Court find that the moving party has not established a sufficient body of facts to justify a determination "on the law" by the Court, the summary judgment motion must be denied.

The uncontested facts are these. On June 22, 1989, Defendants Wright, Roach, and Loveitt went to the Cumberland County Jail to serve Plaintiff with an arrest warrant. They approached Plaintiff in the jail's waiting area, identified themselves as law enforcement personnel, proffered the warrant, and told Plaintiff that he would be handcuffed and transported to the Portland Police Station for booking. Plaintiff responded by swearing, loudly refusing to leave the jail, and challenging Defendant Loveitt to remove him by force. Plaintiff pushed Defendant Loveitt, knocked over a table, and began taking swings at all three Defendants.

*See Thompson v. Olson,* 798 F.2d 552 (1st Cir. 1986), *cert. denied,* 480 U.S. 908, 107 S.Ct. 1354, 94 L.Ed.2d 524 (1987). One paragraph of this Court's decision finding no liability under section 1983 for arresting police officers was preserved by the First Circuit.

Defendants neither deigned to inform the Court of the subsequent history of *Thompson*, nor attempted to analogize the present case to the single remaining valid paragraph of this Court's statement of the law in *Thompson*. This is particularly unsettling given that Defendants rest their entire argument on this citation. The Court is left to speculate as to the direction and content of Defendants' argument. And more importantly, the Court is forced by the failure of both parties to present competent legal arguments on the issue of section 1983 liability to expend its limited resources searching for the governing law without any guidance or assistance. This state of affairs is unfair to the Court, the parties in this case, and to the other litigants seeking the attention of the Court. While the failure of a *pro se* litigant to conform his behavior to the Local Rules can be explained, if not excused, there can be no sufficient explanation of, or justification for, such woefully inadequate briefing by attorneys for the State of Maine and prominent private law firms.

992

Plaintiff was ordered by Defendants Wright and Peterson, who witnessed the arrest, to stop resisting. Even though Defendant Wright had handcuffed Plaintiff's right hand, Plaintiff continued his physical and verbal resistance. Defendants Wright, Roach, and Loveitt wrestled Plaintiff to the floor. Defendant Wright held Plaintiff while the other two officers attempted unsuccessfully to handcuff Plaintiff's left arm, which Plaintiff held beneath his body. Defendant Peterson then joined the struggle by pressing a second set of handcuffs between Plaintiff's shoulder blades, a purportedly common technique used in response to resistance to force someone to free his hands for handcuffing. Finally, when Major William McLaughlin of the Cumberland County Jail arrived on the scene and urged Plaintiff to cooperate, Plaintiff permitted himself to be handcuffed.

During the course of the struggle, Defendants Wright, Roach, Loveitt, and Peterson did not use any weapons, strike Plaintiff, twist his limbs, or place restraints on him in a manner which would restrict his blood circulation. Defendants Joyce and Chitwood were not present during the struggle, did not participate in the arrest, and had no direct, immediate supervisory role in the arrest.

Defendants Wright, Roach, and Loveitt then took Plaintiff to the Portland Police Station for booking. The handcuffs were loosened after Plaintiff had been calmed by Detective James Langella. When the booking process was completed, Defendants Wright, Roach, and Loveitt returned Plaintiff to the Cumberland County Jail. After Plaintiff was returned to the jail, he was never denied access to the law library or to other legal services by Defendant Peterson or any of the other Defendants.

Both the Portland Police Department and the Cumberland County Sheriff's Department have policies that prohibit the use of unjustified or unlawful force in the course of making an arrest. In addition, there is no custom among Portland police officers or Cumberland County deputy sheriffs to use unjustified or unlawful force to effect arrests. Finally, it is both the policy and the custom of the Cumberland County Sheriff's Department to allow prisoners in the jail access to the law library and to legal services.

## II. CONSTITUTIONAL AND STATE CLAIMS

### A. Defendants Joyce and Chitwood

■ Given that they played no direct or indirect role in the incident which inspired this lawsuit, the only means by which Plaintiff might implicate Defendants Joyce and Chitwood is through the use of a *respondeat superior* theory. But liability under section 1983 cannot be established using a *respondeat superior* theory alone. *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). A plaintiff may establish a governmental entity's liability only by showing that there exists a policy or custom of the governmental entity which inflicts injury. *Id.* A plaintiff may establish a supervisor's liability only by showing that "the supervisor's conduct or inaction amounted to a reckless or callous indifference to the constitutional rights of others," and that there was "an affirmative link" between the misconduct of the supervised and the indifference of the supervisor. *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 562 (1st Cir.1989).

■ In the present case, there is no evidence of any governmental policy or custom which resulted in his alleged injuries. Further, there is no evidence that Defendants Joyce and Chitwood engaged in either reckless conduct or inaction. Nor does the evidence establish the requisite link between these two Defendants and the alleged acts of the other Defendants. As a matter of law, Plaintiff cannot establish a violation of section 1983 by Defendants Joyce and Chitwood. In addition, the tort laws applicable to government officials in Maine do not permit liability to be established using only a *respondeat superior* theory. *Miller v. Szelenyi,* 546 A.2d 1013, 1021–22 (Me.1988). In sum, no valid claim against Defendants Joyce and Chitwood exists in this case.

## B. Defendants Wright, Roach, Loveitt and Peterson

Plaintiff's claims that he was denied procedural due process and access to the court cannot be supported on the undisputed record in this case. The record establishes that no effort was made to bar Plaintiff from using the prison library, or to communicate with this or any other court. The Complaint contains allegations of an unlawful transfer to a distant prison facility; however, no facts on this record support those allegations.

Only Plaintiff's allegations that excessive force was used against him when Defendants Wright, Roach, Loveitt and Peterson effected the arrest now remain. Plaintiff alleges that he was forced into a corner by Defendants without provocation or warning, forced to the floor, and then assaulted.[5] The factual record differs from Plaintiff's account. Defendants were apparently attempting to effect a valid arrest, met violent resistance, and responded, without hitting or twisting the limbs of Plaintiff, by physically restraining Plaintiff. The question is whether these acts constitute excessive force.

■ The Supreme Court recently proclaimed a significant shift in the standard to be used in judging the validity of excessive force cases brought under section 1983. Previously, the heightened scrutiny standard had been based on constitutional substantive due process and the assumption that "there is a 'right' to be free from excessive force, grounded not in any particular constitutional principles but rather in 'basic principles of § 1983 jurisprudence.'" *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989). *See also Fonte v. Collins*, 718 F.Supp. 1 (D.Me. 1989) (discussing the effect of *Graham*). The *Graham* Court rejected this analysis and required plaintiffs to identify the specific constitutional right which allegedly had been infringed by the state actor's application of force. The standard which governs consideration of alleged violations of that specific constitutional right must then be applied to the facts of the particular case. *Graham*, 109 S.Ct. at 1870.

Excessive force claims arising from arrests, such as this case, are brought to enforce the Fourth Amendment guarantee that citizens have the right "to be secure in their persons ... against unreasonable searches and seizures" of the person. *Id.* at 1871; *Fonte*, 718 F.Supp. at 2.[6] This new substantive basis for section 1983 excessive force claims carries with it a new standard: "reasonableness." The question in this case, therefore, is whether an objectively reasonable officer, on the scene of this scuffle, would have used the amount of force employed by these Defendants. Answering this question requires giving due consideration to "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 109 S.Ct. at 1872.

■ The Court finds that this uncontested factual record is not sufficient to permit a holding as a matter of law. A substantial question remains as to whether or not the acts of Defendants were objectively reasonable given the context in which they took place. In certain circumstances, there can be no doubt that an officers' reaction is unreasonable. *See, e.g., Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985) (shooting an unarmed, fleeing prisoner is always an unreasonable seizure). In other circumstances, when the facts in an uncontested record are not conclusive, doubt may remain as to whether an officer's acts were reasonable. *See, e.g.,*

---

**5.** Plaintiff's allegation that the assault included the use of a weapon by Defendant Peterson cannot be supported on this record.

**6.** The Court of Appeals for the First Circuit has held that claims of excessive use of force outside the context of a seizure may still be analyzed under substantive due process principles,

even after *Graham*. *Landol-Rivera v. Cruz Cosme*, 906 F.2d 791, 796 (1st Cir.1990). There is no doubt that an arrest constitutes a "seizure" of the person and, therefore, the Court applies the foregoing Fourth Amendment analysis prescribed by the Supreme Court.

*Wright v. Whiddon,* 747 F.Supp. 694 (M.D. Ga.1990) (shooting an unarmed, fleeing prisoner is neither reasonable nor unreasonable as matter of law under the circumstances).[7] The existence of that doubt precludes the granting of a summary judgment motion. The facts on this record do not conclusively or inevitably establish that Defendants acted reasonably in applying the amount of force they have admitted to using in effecting Plaintiff's arrest. Accordingly, Defendants are not entitled to summary judgment on Plaintiff's claim that excessive force was used in effecting the arrest.

■ Plaintiff also alleges that Defendants' acts constituted an assault under Maine law. Defendants base their summary judgment motion on the statute which governs the use of nondeadly force by police officers while effecting an arrest reads as follows:

1. A law enforcement officer is justified in using a reasonable degree of nondeadly force upon another person:

A. When and to the extent that he reasonably believes it necessary to effect an arrest or to prevent the escape from custody of an arrested person, unless he knows that the arrest or detention is illegal; or

B. To defend himself or a 3rd person from what he reasonably believes to be the imminent use of nondeadly force encountered while attempting to effect such an arrest or while seeking to prevent such an escape.

17–A M.R.S.A. § 107(1). As already noted, doubt remains after consideration of the factual record as to whether or not Defendants acted reasonably under the circumstances. In addition, the factual record is not conclusive on the issue of what Defendants may or may not have reasonably believed under the circumstances about the need for force to effect the arrest or to prevent the use of nondeadly force by Plaintiff. Consequently, Defendants have not satisfied their burden of adducing sufficient facts to entitle them to summary judgment that this state statute protects them for liability for the manner in which they effected the arrest of Plaintiff.

Accordingly, Defendants' Motion for Summary Judgment is hereby GRANTED with respect to Defendants Martin Joyce and Michael Chitwood. Defendants' Motion for Summary Judgment is GRANTED with respect to Plaintiff's "First Cause of Action" as it relates to claims of denial of procedural due process (Complaint at ¶ 27), and with respect to Plaintiff's "Second Cause of Action" (Complaint at ¶ 29). Defendants' Motion for Summary Judgment is hereby DENIED with respect to Defendants Mark Peterson, Kenneth Loveitt, Allen Wright, and Michael Roach for all remaining causes of action.

SO ORDERED.

---

7. The Court of Appeals for the First Circuit has recently expressed approval for the granting of summary judgment on Fourth Amendment "reasonableness" determinations. It is important to note, however, that the First Circuit approved in circumstances where they found that *"it is beyond doubt* that the conditions for the use of deadly force were met in this case...." *Landol–Rivera v. Cruz Cosme,* 906 F.2d 791, 793 (1st Cir.1990) (emphasis added). The District had held in that same case that "there is *no question of fact, whatsoever, as to whether the defendant police officers had probable cause* to believe that the suspect posed a threat of serious physical harm to the officers or to the others...." *Id.* (quoting Opinion and Order on Motion for Summary Judgment at 5–6 (Arenas, M.J.)) (emphasis added).