**Arquimides SANCHEZ, Plaintiff,**

v.

**Johnny Rojas FIGUEROA, et al., Defendant.**

**Civil 97–1039(JP).**

United States District Court, D. Puerto Rico.

Feb. 23, 1998.

John E. Mudd, Ortiz Toro & Ortiz Brunet, Hato Rey, PR, for Plaintiff.

John F. Nevares, Smith & Nevares, San Juan, PR, José F. Gaztambide Añeses, Gaztambide & Plaza, San Juan, PR, for Defendant.

## *ORDER*

PIERAS, District Judge.

## I. INTRODUCTION

The Court has before it Plaintiff's Motion in Compliance with Order of January 21, 1998 (**docket No. 43**). Plaintiff has brought this action under 42 U.S.C. § 1983 asserting that Officer Johnny Rojas Figueroa ("Rojas") violated the constitutional rights of his son, Alexis Sánchez Beltrán ("Alexis"), when he shot and mortally wounded Alexis. At the time, Rojas was allegedly firing at a motorist who had refused his order to stop. The bullet missed the fleeing motorist and struck Alexis in the head. Plaintiff originally named Rojas and several of Rojas' supervisors as defendants. Rojas himself defaulted, and Plaintiff voluntarily dismissed the Complaint against all remaining defendants other than current police superintendent Pedro Toledo Dávila ("Toledo"). On September 11, 1997, the Court entered partial judgment reflecting the default judgment against Rojas and the partial dismissal of the Complaint. On the same date, the Court entered an

Initial Scheduling Conference Order reflecting the discussion held between the parties and the Court at the Initial Scheduling Conference ("ISC"). Therein, the Court ordered Toledo, the sole remaining defendant, to produce all of the evidence which Plaintiff informed the Court he would need to determine whether he had a colorable claim against Toledo premised on supervisory liability—Rojas' psychological records and his deposition. Recently, in an Order dated January 21, 1998, the Court recounted Plaintiff's failures antecedent to the ISC; there is no need to reiterate them. Suffice it to say that long after the October 10, 1997 deadline set at the ISC, Plaintiff has yet to determine if he wishes to proceed with this action.

## II. *SUA SPONTE* SUMMARY JUDGMENT

█ In the above mentioned Order of January 21, 1998, the Court instructed Plaintiff to provide evidence demonstrating the trialworthiness of his claim against Toledo under threat of summary dismissal. Plaintiff correctly points out the Court has the power to enter summary judgment, *sua sponte*, so long as the Court provides the "targeted party ... an opportunity to dodge the bullet." *Berkovitz v. Home Box Office, Inc.*, 89 F.3d 24, 29 (1st Cir.1996). That "opportunity" is embodied in two requirements: "First, a district court ordinarily may order summary judgment on its own initiative only when discovery is sufficiently advanced that *the parties have enjoyed reasonable opportunity to glean the material facts.*" *Id.* (emphasis added). "Second, the court may enter summary judgment *sua sponte* only if it first gives the targeted party appropriate notice and a chance to present its evidence on the essential elements of the claim or defense." *Id.* While accepting the Court's authority to dispose of this action, *sua sponte*, Plaintiff argues that "the Court has not allowed sufficient discovery to allow it to enter summary

judgment."[1] For two reasons, Plaintiff's contention is in error.

First, Plaintiff misstates the requirement—the Court need not allow discovery, the Court need only permit a reasonable opportunity to glean the material facts. At the ISC, the Court specifically asked Plaintiff what discovery he required to determine the viability of his case against Toledo. When Plaintiff informed the Court of the limited discovery he required, the Court actually scheduled that discovery. Since that time, Plaintiff has decided, without involving the Court, that he needs additional evidence, some of which he has undertaken to obtain for himself, albeit very slowly. The Complaint in this case was filed on January 14, 1997—over one year ago. While the Court is aware that Defendants, as public officials seeking paid legal representation under local law, delayed the progress of the proceedings for several months, Toledo answered the Complaint on June 16, 1997, nearly seven months ago. At that time, discovery began in earnest, and Plaintiff had at his disposal numerous means for obtaining the information necessary to determine if he had a legitimate case against Toledo. By the date of the ISC, September 10, 1997, at the very latest, Plaintiff knew of the need for any information relating to his case against Toledo. He has had five months and all the discovery weapons of the Federal Rules of Civil Procedure to obtain that information. He has had ample "opportunity to glean the material facts."

Second, and perhaps more importantly, based on the jurisprudence of supervisory liability, which the Court will discuss in more detail, Plaintiff has obtained all of the information necessary to establish certain essential elements of his claim against Toledo. The discovery Plaintiff now seeks—regarding the Police Department's hiring and training practices and procedures—is exactly the costly and potentially unnecessary discovery that Plaintiff expressed a desire (shared by Defendants and the Court) to avoid at the

---

**1.** Plaintiff has not complained that the Court failed to meet the second requirement that he be provided with adequate notice. As far back as November 25, 1997, the Court instructed Plaintiff to present any evidence he obtained to support a claim of supervisory liability against Tole-

do. In the Court's Order of January 21, 1998, the Court expressly stated that it would summarily dismiss the case if Plaintiff failed to timely demonstrate the trialworthiness of his case on or before February 9, 1998. Clearly, Plaintiff had the benefit of ample warning.

ISC. This information is of no moment should other aspects of Plaintiff's case be unsupportable. In sum, contrary to Plaintiff's contention, this case is ripe for *sua sponte* dismissal.

### III. SUPERVISORY LIABILITY UNDER 42 U.S.C. § 1983

Under § 1983, liability may attach to supervisors based on the actions of subordinates, but only where an act or omission of the supervisor himself can be affirmatively linked to the subordinate's behavior. *Sánchez v. Alvarado,* 101 F.3d 223, 227 (1st Cir.1996):

> Supervisory liability under 42 U.S.C. § 1983 cannot be predicated on the doctrine of *respondeat superior.* A supervisor can be held liable only on the basis of her own acts or omissions. As we have explained: "[A] state official can be held liable if (1) the behavior of [a] subordinate results in a constitutional violation and (2) the official's action or inaction was affirmatively linked to that behavior in that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." More recently we have noted that an indifference that rises to the level of being deliberate, reckless or callous, suffices to establish liability under § 1983. The requirement of an affirmative link between the behavior of a subordinate and the action or inaction of defendant official contemplates proof that the supervisor's conduct led inexorably to the constitutional violation.

[Citations and internal quotes omitted]. Since the First Circuit upheld a substantial jury verdict against former Superintendent of the Puerto Rico Police Department Desidero Cartagena, *Gutiérrez–Rodríguez v. Cartagena,* 882 F.2d 553 (1st Cir.1989) (upholding a verdict of over five million dollars in a police brutality case), nearly every (if not every) complaint filed in Puerto Rico seeking redress under § 1983 based on allegations of police brutality has named as a defendant various supervisors. Toledo and his predecessors are named as defendants as a matter of course in such actions; the Complaint in the instant case is no different.

Plaintiff's Complaint against Toledo boils down to two allegations. First, Plaintiff alleges Toledo failed to implement satisfactory systems for screening and supervising police officers. Toledo should have been put on notice by "a series of unjustified acts of violence over a period of years on the part of police officers" of an urgent need to update screening and testing of new candidates. Moreover, he should have been put on notice "through the many civil rights violations on the part of police officers" of the need for an "early warning system whereby problematic and violence-prone policemen might be detected and dealt with before they seriously hurt someone without justification or violated someone's civil rights." Finally, with respect to screening and supervision, Plaintiff alleges that officer Rojas' "excessively aggressive and abusive conduct of Rivera [2] should have served as a 'red flag' and alerted his supervisors that they [sic] were dangerous persons posing a threat to the constitutional rights of all citizens." In essence, Plaintiff asserts that Toledo acted with reckless disregard in failing to implement a mechanism for screening applicants and active officers that would have prevented the initial hiring of Rojas and/or facilitated his dismissal because he demonstrated that he was likely to violate the constitutional rights of citizens, and that Toledo's failure "led inexorably" to the violation of Alexis' constitutional rights.

Next, Plaintiff alleges that Toledo failed to implement a proper training program. He asserts that Toledo should have known that Rojas was not properly trained in the use of weapons and the appropriate use of deadly force. Although not expressly stated, implicit in this allegation is the further allegation that Toledo's failure to train Rojas amounted to reckless indifference and "led inexorably" to the violation of Alexis' constitutional rights.[3] In order to clarify what the Court

---

**2.** The Complaint frequently discusses Officer "Rivera," but the Court believes that Plaintiff mistakenly substituted Rivera for Rojas, as no factual allegations implicate an Officer Rivera.

**3.** Also never expressly stated anywhere in Plaintiff's Complaint, but necessarily implicit therein, is the allegation that Officer Rojas violated Alexis' constitutional rights when he fired at a vehicle

expects of Plaintiff at this point, the Court will outline the *prima facie* case for failure to train and failure to screen/supervise.

But initially,. the Court will address the common requirement that attaches to either case: Plaintiff must first demonstrate that Rojas violated Alexis' constitutional rights. *See Seekamp v. Michaud,* 109 F.3d 802, 808 (1st Cir.1997) (constitutional violation by the subordinate a "required predicate" to supervisory liability). Plaintiff asserts violations of the First, Fourth, and Fourteenth Amendments to the Constitution, but the Complaint alleges facts sufficient to make out a claim only under the Fourteenth Amendment.[4] At its core, this case is about the use of excessive force. But where the alleged force has not been applied to the complaining party "in an attempt to gain control of the individual," there can be no Fourth Amendment violation. *Landol–Rivera v. Cruz Cosme,* 906 F.2d 791, 795 (1st Cir.1990) (relying on *Brower v. County of Inyo,* 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989)). This case, much like *Landol–Rivera,* involves allegations of excessive force brought by a person at whom the force was not directed. In *Landol–Rivera* the plaintiff had been taken hostage by a robber, and the police shot the plaintiff accidentally while attempting to stop the fleeing felon. Although the police in *Landol–Rivera,* like Rojas in the case at bar, intentionally fired their weapons, the court held that intent was not directed at the plaintiff/hostage and did not implicate the "misuse of power" *via* "willful detention ... that the Fourth Amendment was designed to govern." *Id.* (quoting *Brower,* 109 S.Ct. at 1381). Instead, "[i]t is intervention directed at a specific individual that furnishes the basis for a Fourth Amendment claim." *Id.* at 796.

That does not mean persons such as Alexis and Landol–Rivera are not without protection. "Claims of excessive force outside of the context of a seizure may still be analyzed under substantive due process principles." *Id.; accord Petta v. Rivera,* 133 F.3d 330, 1998 WL 13415 *10 (5th Cir. January 16, 1998); *Wilson v. Northcutt,* 987 F.2d 719, 722 (11th Cir.1993); *Pleasant v. Zamieski,* 895 F.2d 272, 276 n. 2 (6th Cir.1990); *Sinaloa Lake Owners Assoc. v. City of Simi Valley,* 882 F.2d 1398, 1408 n. 10 (9th Cir. 1989). In this circuit, "government officials may be held liable for a substantive due process violation only if their conduct 'reflects a reckless or callous indifference to an individual's rights.' " *Landol–Rivera,* 906 at 796 (quoting *Gutiérrez–Rodríguez,* 882 F.2d at 559). In determining whether an officer acted with reckless or callous indifference to an individual's rights, we must remain cognizant of the role of police officers and that "police response to violent crime will at times create some risk of injury to others, including innocent bystanders." *Id.* at 797. Moreover, we must exercise care to avoid "chill[ing] law enforcement officers in the performance of their duties and encourag[ing] ... criminal activity in public settings." *Id.*

In assessing an officer's actions under the substantive due process clause, most courts have considered "such factors as the need for the application of the force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Petta,* 133 F.3d at 350 (J. Dennis, dissenting) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973) (J. Friendly's seminal opinion on substantive due process analysis of excessive force claims)). While substantive due process analysis has been rendered inapposite to situations to which specific constitutional amendments apply, *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (holding that the validity of an excessive force claim arguably based on a violation of a specific protection of the Bill of Rights, such as those contained in the Fourth and Eighth Amendments, must be judged by reference to the specific standard which governs that right rather than by the more general substantive due process standard), the fac-

---

and accidentally shot and mortally wounded Alexis.

4. The Court sees no basis for claiming any First Amendment violation against either the Plaintiff or his son.

tors set forth by Judge Friendly in *Glick* remain useful in analyzing claims of excessive force by innocent bystanders who have no Fourth or Eighth Amendment claims.

The Court believes Plaintiff has had ample opportunity to obtain evidence to create a material factual dispute as to whether Rojas actually committed a constitutional tort. Plaintiff has known since he filed this action that he would need to prove Rojas' actions amounted to a violation of Alexis' constitutional rights. He has deposed Rojas, and he has access to witnesses in order to obtain sworn statements. The discovery Plaintiff now seeks does not relate to the issue of Rojas conduct at the time of the accident. Therefore, the Court will require Plaintiff to provide all his evidence that would support a jury finding that Rojas' actions deprived Alexis of a constitutional right.

■ Turning now to Plaintiff's supervisory liability claims, and assuming Plaintiff can demonstrate that Rojas violated Alexis' constitutional rights, Plaintiff can succeed on his claim that Toledo failed to screen and/or supervise Rojas only by proffering evidence demonstrating "deliberate indifference." *Sánchez*, 101 F.3d at 227. In the Court's estimation, where Plaintiff alleges failure to implement a satisfactory screening and/or supervision mechanism as a basis for supervisory liability, deliberate indifference encompasses three separate elements. *Cf. Bowen v. City of Manchester*, 966 F.2d 13, 17 (1st Cir.1992). First, Plaintiff must demonstrate that the current screening/supervision mechanisms utilized by the police department are deficient.[5] *Id.* (in order to establish deliberate indifference, plaintiff must demonstrate unusually serious risk of harm). That is, Plaintiff must demonstrate that candidates whose reasonably observable qualities demonstrate an abnormal likelihood that they will violate the constitutional rights of citizens are being hired and/or active officers whose reasonably observable conduct demonstrates a similar likelihood are not being

screened for dismissal or (re)training. *E.g., Gutiérrez–Rodríguez*, 882 F.2d at 564–66. Obtaining the type of evidence necessary to demonstrate a deficiency in existing screening/supervision mechanisms would require substantial discovery efforts and probably involve experts in police administration. *E.g., id.* This is the type of discovery the Court seeks to avoid if possible. Therefore, the Court will not presently put Plaintiff to establishing an evidentiary basis for this element.

Second, in order to demonstrate deliberate indifference, Plaintiff will be required to demonstrate that Toledo knew or should have known that the above-discussed deficiencies exist.[6] *Febus–Rodríguez v. Betancourt–Lebrón*, 14 F.3d 87, 92 (1st Cir.1994); *Bowen*, 966 F.2d at 17 (in order to show deliberate indifference, plaintiff must show that defendant had actual knowledge or was willfully blind of danger). Although the evidence used to prove these first and second elements of deliberate indifference to deficient screening and/or supervision will likely overlap, they are distinct elements. Proving knowledge or wilful blindness will require the proffer of evidence that was known or should have been known to Toledo and that put him on notice or should have put him on notice that a problem existed. For example, a problem in screening or supervision will necessarily exist before it becomes known— something must occur that puts the Superintendent on notice before he can be deemed reckless for failing to address the problem. At this point in the litigation, the Plaintiff should be able to provide some evidence that Toledo knew of the alleged deficiency. In his Complaint, Plaintiff makes reference to reports and newspaper articles, as well as "civil rights violations." However, as full proof of this element at trial will likely involve the use of evidence that has yet to be subject to discovery, the Court will not presently require Plaintiff to submit evidence on this element either.

---

5. If the claim is based on Rojas' hiring, the evidence will of course have to show that the deficiency existed at the time he was hired.

6. Again, if the claim is based on Rojas' hiring, the evidence will of course have to show that Toledo knew the deficiency existed prior to the time Rojas was hired.

Third, assuming Plaintiff can successfully demonstrate that a deficiency in the screening and/or supervision mechanisms used by the police existed and that Toledo knew of it, Plaintiff will then have to show that Toledo failed to reasonably address the problem. *Bowen,* 966 F.2d at 17 (in order to show deliberate indifference, plaintiff must show defendant failed to take obvious steps to address that known, serious risk). For even if Plaintiff succeeds in proving a deficiency and that Toledo knew or should have known of that deficiency, we cannot expect an overnight solution. Toledo has a duty to keep the peace in Puerto Rico. He cannot fire all of the police officers overnight and rehire and retrain them the next day. Solutions to the deficiency alleged by Plaintiff cannot be formulated and implemented instantaneously. Toledo can only have acted with deliberate indifference if he failed to address the known problem at all when he became aware of it (or should have become aware of it) or if he addressed it in a manner so unreasonable as to be reckless. Again, proof of this aspect of the case will require discovery not yet undertaken, so the Court will not presently require Plaintiff to make that proof.

The three elements outlined above constitute a *prima facie* case of deliberate indifference. But "deliberate indifference is not the be-all and the end-all of a section 1983 claim premised on supervisory liability ... there is a causation element as well." *Maldonado–Denis v. Castillo–Rodríguez,* 23 F.3d 576, 582 (1st Cir.1994). In a case such as this, Plaintiff must demonstrate that Toledo would have known Rojas was likely to commit the alleged constitutional violation, had he not failed to take reasonable steps to address the deficiency in the screening/supervision mechanism—i.e., Rojas would not have been hired, would have been fired, or would have been

(re)trained such that he would not have committed the violation.[7] In other words, if Rojas' record was such that even a screening/supervision mechanism in line with the standards of the profession would not have singled him out as unfit for service or in need of special training, then Toledo's actions cannot be the proximate cause[8] of the constitutional tort at issue in this case. *See Rodríguez–Cirilo v. García,* 115 F.3d 50, 52 (1st Cir.1997) (discussing tort-like nature of causation requirement of § 1983 action). This is the aspect of the case which the Court expects Plaintiff to be able to demonstrate at this point in the litigation. Plaintiff came to the ISC seeking discovery necessary to establish causation, and the Court believes Plaintiff has had ample opportunity to uncover the evidence necessary to demonstrate that Rojas' reasonably observable characteristics, behavior, or conduct indicated an abnormally high likelihood that he posed a threat to violate the constitutional rights of citizens in the manner alleged. If Plaintiff cannot make that showing of causation, the rest of the case becomes moot and costly, and unnecessary discovery can be avoided.

■ Like Plaintiff's claim that Toledo acted with reckless disregard for the constitutional rights by failing to implement a sufficient screening/supervision mechanism, Plaintiff's claim that Toledo failed to adequately train officers in the use of weapons and deadly force encompasses a showing of deliberate indifference and a showing of causation. The deliberate indifference element of the failure to train claim can also be broken into the same three elements: first, officers of the Puerto Rico Police Department were not adequately trained in the use of weapons or the application of deadly force;

7. A plaintiff could also succeed under a theory of supervisory liability by demonstrating that the supervisor actually had information about an officer before him such that his failure to take action (dismissing the officer or otherwise) constituted a reckless disregard for the rights of citizens. Plaintiff in this case has not alleged that Toledo actually saw any such information, only that he recklessly failed to implement a system whereby he, or someone else with the authority to take the requisite action, would have seen such information.

8. The jurisprudence from this circuit regarding supervisory liability makes extensive use of the term "causation" which does not always appear consistent. But where the alleged act predicating liability is the failure to implement a system for screening out unfit applicants or active officers, the resultant harm must be the hiring of the unfit applicant or continued employment of the unfit officer.

second, Toledo knew, or should have known of that deficiency; third, Toledo failed to take obvious steps to remedy the problem. *Bowen,* 966 F.2d at 17. Again, although Plaintiff should be able to put forward some evidence at this point regarding whether or not Toledo perceived or should have perceived a problem in the training of his officers, the Court will not put Plaintiff to the task of making a showing of deliberate indifference at this point.

However, as with the failure to screen/supervise claim, Plaintiff must prove causation. In order to prove causation with respect to the failure-to-train claim, Plaintiff must show that Rojas was not properly trained in the use of his weapon and/or the application of deadly force and that, had he been so trained, he would not have violated Alexis' constitutional rights (i.e., proper training would have prevented the constitutional tort). On this element, too, the Court finds that Plaintiff has had ample opportunity for discovery and will put Plaintiff to the task of bringing forth evidence from which a reasonable jury might find for him.

## IV. CONCLUSION

 In order to succeed at trial, Plaintiff must prove a number of elements. The evidence necessary to prove many of those elements has not yet been the subject of discovery. On those issues, the Court may not properly enter summary judgment at this point. *Berkovitz,* 89 F.3d at 29. However, the Court believes Plaintiff has had "reasonable opportunity to glean the material facts" necessary to defeat summary judgment with respect to several issues. *Id.* First, Toledo's supervisory liability must be predicated on a constitutional violation by Rojas. Plaintiff has completed discovery regarding this issue. Second, with respect to Plaintiff's claim that Toledo failed to implement a system of screening applicants and/or supervising active officers, Plaintiff must demonstrate that a reasonably adequate system of screening and/or supervision would have notified Toledo or someone else with authority to rectify any personnel problems that Rojas was unfit to serve as a police officer. Again, Plaintiff has conducted the discovery necessary to

obtain evidence necessary to defeat summary judgment on this issue. Finally, with respect to Plaintiff's claim that Toledo failed to implement a satisfactory training regimen, Plaintiff must prove that Rojas was not properly trained. Plaintiff has conducted the discovery necessary to defeat summary judgment on this issue as well. Because discovery on the remaining issues would be costly and time consuming, because Plaintiff's inability to establish a genuine issue of material fact with respect to the three elements with respect to which he has completed discovery, and because Plaintiff himself expressed the desire to limit discovery initially, the Court hereby **ORDERS** Plaintiff to submit, on or before **March 9, 1998,** a brief and evidence supporting the trialworthiness of his claims. His brief and exhibits must establish the existence of a genuine issue of material fact with respect to each of the three elements on which Plaintiff has (or should have) completed discovery. Plaintiff's failure to comply will result in the summary dismissal of his Complaint.

IT IS SO ORDERED.