Marie EVANS, p.p.a. Muriel Evans, Plaintiff, Appellant,

v.

Terrace AVERY, et al., Defendants, Appellees.

Muriel EVANS and Billy Evans, Plaintiffs, Appellees,

v.

CITY OF BOSTON, Defendant, Appellant.

Nos. 95–2125, 95–2126.

United States Court of Appeals, First Circuit.

Argued Sept. 12, 1996.

Decided Nov. 20, 1996.

Michael Avery, Boston, MA, with whom Perkins, Smith & Cohen was on brief, for plaintiffs.

Kevin S. McDermott, Assistant Corporation Counsel, Boston, MA, with whom Merita A. Hopkins, Corporation Counsel, was on brief, for defendants.

Before SELYA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and BOYLE,* Senior District Judge.

SELYA, Circuit Judge.

These appeals require us to revisit the legal standard which courts must apply to

* Of the District of Rhode Island, sitting by designation.

resolve a claim that a police pursuit has been conducted in a manner antithetical to the protections afforded by the substantive aspect of the Due Process Clause. The question arises in the context of a civil action brought against the City of Boston and two of its police officers after a motor vehicle driven by a suspected drug dealer fleeing from the police struck and injured a youthful pedestrian, Marie Evans. The district court took Evans' civil rights claims from the jury, and Evans now appeals both the court's direction of a verdict in favor of the police officers and its earlier grant of summary judgment in favor of the City. At the same time, the City cross-appeals from a jury verdict in favor of Evans' parents on a related state-law tort claim. We affirm the judgment below in all respects.

## I. BACKGROUND

We assess the facts of record in the light most favorable to the plaintiffs. *See, e.g., Veranda Beach Club Ltd. Partnership v. Western Sur. Co.*, 936 F.2d 1364, 1375 (1st Cir.1991) (elucidating standard of review for directed verdicts); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990) (same re summary judgments). No further elaboration of the facts is needed for disposition of the cross-appeal.

The events that fomented this lawsuit occurred in the twinkling of an eye. At approximately 6:00 p.m. on August 12, 1992, officers Terrace Avery and John J. Greene were cruising through a residential neighborhood in the Dorchester section of Boston. They spotted suspicious activity at the intersection of Nixon and Centre Streets: an individual who appeared to be startled at their presence yelled excitedly, threw a paper bag through the open window of a parked Oldsmobile, and vaulted into the front passenger seat. The driver immediately headed west on Centre St. at 20–25 m.p.h.

Greene decided to stop the automobile and detain its occupants. He executed a U-turn, set out after the Oldsmobile, and activated his siren and wig-wag lights. Instead of stopping, the suspects' car accelerated. The officers took up the chase in earnest, travelling at roughly 45 m.p.h. When the officers observed the occupants of the Oldsmobile placing small items in their mouths and passing a jug back and forth, they concluded that the suspects were swallowing potential evidence.

As the Oldsmobile approached Codman Square—a complex intersection at which Centre St., Washington St., Norfolk St., and Talbot Ave. meet—it crossed to the wrong side of the road, passed three cars waiting at a red light, and turned left on Washington St., travelling as fast as 50 m.p.h. The officers remained close behind. Approximately 300 feet from Codman Square, the suspects' vehicle struck a ten-year-old girl, Marie Evans, who was attempting to cross Washington St. Greene stopped his car and Avery alighted to assist the victim. Greene then continued his pursuit of the Oldsmobile. The entire incident lasted no more than two minutes.

The plaintiffs' evidence shows that traffic was heavy at the time of the chase and that numerous pedestrians were about. Both Greene and Avery were familiar with Codman Square and knew that it was a busy shopping venue adjacent to a densely populated residential area. They also knew that Centre St. affords limited visibility of the Codman Square intersection.

Marie Evans sued the officers pursuant to 42 U.S.C. § 1983 (1994); she sued the City pursuant to the same statute; and she and her parents, Muriel and Billy Evans, sued the City under Mass. Gen. L. ch. 258, § 2 (1988).[1] The district court (Young, U.S.D.J.)

---

1. The statute provides in relevant part:

Public employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances, except that public employers shall not be liable

... for punitive damages or for any amount in excess of one hundred thousand dollars. The remedies provided by this chapter shall be exclusive of any civil action or proceeding by reason of the same *subject matter* against the public employer or, the public employee ... whose negligent or wrongful act or omission gave rise to such claim, and no such public employee ... shall be liable for any

granted summary judgment in favor of the City on Evans' section 1983 claim. Ruling *ore tenus*, the court determined that the plaintiff had failed to adduce evidence sufficient to prove a policy or custom of deliberate indifference attributable to the City. The parties thereafter consented to trial before a magistrate judge. *See* 28 U.S.C. § 636(c) (1994); Fed.R.Civ.P. 73(a). At the conclusion of the evidence, the court (Collings, U.S.M.J.) took the remaining section 1983 claim from the jury and granted the officers' motions for judgment as a matter of law. *See Evans v. Avery*, 897 F.Supp. 21 (D.Mass.1995). The jury then considered the pendent claims and awarded damages to Evans and each of her parents in the amount of $100,000 (the per claimant maximum allowable under state law, *see supra* note 1). These appeals followed.

## II. THE SECTION 1983 CLAIM AGAINST THE OFFICERS

Marie Evans asserts that the nisi prius court erred in directing a verdict for the police officers. She argues, in the alternative, that the court applied the wrong legal standard, and that, whatever legal standard obtains, the evidence established a jury question as to whether the officers' conduct violated her right to substantive due process.

█ Section 1983 supplies a private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or by federal law. Evans' mishap involved neither physical contact with a police officer nor police action directed at her. In short, it was not a seizure and it was therefore not in derogation of her Fourth Amendment rights. *See Brower v. County of Inyo*, 489 U.S. 593, 596–97, 109 S.Ct. 1378, 1381–82, 103 L.Ed.2d 628 (1989) (distinguishing between police action directed toward producing a particular result and police action that happens to cause an unintend-

ed, if foreseeable, result and holding that only the former can constitute a seizure); *Landol–Rivera v. Cruz Cosme*, 906 F.2d 791, 796 (1st Cir.1990) ("It is intervention directed at a specific individual that furnishes the basis for a Fourth Amendment claim."). Nevertheless, even outside the context of a seizure, appellate courts have noted that a person injured as a result of police misconduct may prosecute a substantive due process claim under section 1983. *See, e.g., Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1408 n. 10 (9th Cir. 1989), *cert. denied*, 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990); *see also Landol–Rivera*, 906 F.2d at 796 (assuming proposition). The initial question that confronts us concerns the legal standard by which the officers' conduct should be judged in such instances.

We begin with an historical perspective. In *Landol–Rivera* we ruled that police officers who were engaged in hot pursuit of a suspect could not be held liable under the substantive aspect of the Due Process Clause for the shooting of a hostage. 906 F.2d at 798. We premised that ruling on a determination that the officers' conduct did not reflect a reckless or callous indifference to the hostage's rights. *See id.* at 796–98. Two things about this articulation of the applicable legal standard are noteworthy. In the first place, our use of the "deliberate indifference" test did not broach new ground, but, rather, reflected a fairly straightforward application of our earlier holding in *Germany v. Vance*, 868 F.2d 9 (1st Cir.1989), in which we posited that reckless or callous indifference to an individual's rights is a necessary predicate to triggering the substantive protections of the Due Process Clause. *See id.* at 17–19.[2] In the second place, *Landol–Rivera* did not presume to undertake a full formulation of the test applicable to substantive due process claims in creation of danger cases; instead,

injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment;....

Mass. Gen. L. ch. 258, § 2 (1988).

**2.** Our decision in *Germany* responded to the Supreme Court's invitation in *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662

(1986). There, the Court held that mere negligence is insufficient to implicate the substantive protections of the Due Process Clause but left open the question of whether something less than intentional conduct might be enough to trigger those protections. *See id.* at 334 n. 3, 106 S.Ct. at 666 n. 3.

the court went only as far as was needed to show the infirmity of the particular claim before it.[3]

After this court decided *Landol–Rivera,* the Justices revisited the jurisprudence of substantive due process in *Collins v. City of Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). In that case, the widow of an asphyxiated sanitation department employee claimed that her deceased husband had "a constitutional right to be free from unreasonable risks of harm to his body, mind and emotions and a constitutional right to be protected from the [city's] custom and policy of deliberate indifference toward the safety of its employees." *Id.* at 117, 112 S.Ct. at 1064. Noting its traditional reluctance "to expand the concept of substantive due process," *id.* at 125, 112 S.Ct. at 1068, the Court recharacterized the plaintiff's "deliberate indifference" claim to include an additional element, namely, "that the city's 'deliberate indifference' to Collins' safety was arbitrary government action that ... 'shock[s] the conscience' of federal judges." *Id.* at 126, 112 S.Ct. at 1069. The Court reiterated this standard when it determined that the city's alleged failure to train or warn its employees was not actionable as a substantive due process violation because the city's conduct could not "be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Id.* at 128, 112 S.Ct. at 1070. Rather, the Court held petitioner's claim to be "analogous to a fairly typical state-law tort claim," and noted that it had "previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law." *Id.*

Since *Collins* was decided in 1992, two of our sister circuits, faced with the need to construct a template for substantive due process claims arising out of the state's creation of danger, have held squarely that the "shock the conscience" rubric furnishes the appropriate test. The Third Circuit, sitting en banc, adopted this standard in a police pursuit case. *See Fagan v. City of Vineland,* 22 F.3d 1296, 1306–07 (3d Cir.1994) (en banc) ("In light of the Supreme Court's unanimous adherence to the 'shocks the conscience' test in *Collins,* the reckless indifference of government employees is an insufficient basis upon which to ground their liability for a police pursuit under the Due Process Clause."). In a different factual context, the Tenth Circuit relied on *Collins* for the proposition that the "shock the conscience" test governs substantive due process claims in all creation of danger cases. *See Uhlrig v. Harder,* 64 F.3d 567, 571 (10th Cir.1995), *cert. denied* —— U.S. ——, 116 S.Ct. 924, 133 L.Ed.2d 853 (1996). Moreover, at least two other courts of appeals, anticipating *Collins,* adopted the "shock the conscience" standard in police pursuit cases prior to 1992 (and still adhere to it). *See Temkin v. Frederick County Comm'rs,* 945 F.2d 716, 723 (4th Cir.1991), *cert. denied,* 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992); *Checki v. Webb,* 785 F.2d 534, 538 (5th Cir.1986). To be sure, the position taken by these courts is not uncontroversial. Judge Cowen wrote a vociferous dissent in *Fagan,* 22 F.3d at 1309, and the Ninth Circuit recently rejected the "shock the conscience" test, *Collins* notwithstanding. *See Lewis v. Sacramento County,* 98 F.3d 434, 440 (9th Cir.1996) (holding that deliberate indifference or reckless disregard "is the minimum required to sustain a § 1983 claim in the context of a high-speed police pursuit").

■ We are persuaded that the majority view of the minimum threshold in cases like

---

**3.** In *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 582 (1st Cir.1989), we upheld a section 1983 substantive due process claim under the "reckless or callous indifference" standard. There, four armed plainclothes police officers approached a car occupied by a young couple admiring the view at a secluded spot. When the swain saw the unidentified men, he started his car and began to drive away. Without warning, the officers opened fire and severely injured him.

*See id.* at 557. Because the parties in *Gutierrez–Rodriguez* tried the case on the assumption that "reckless and callous indifference" constituted the rule of decision for section 1983 substantive due process claims—and argued in the same vein on appeal—we had no occasion to address whether anything beyond that standard might be required. In all events, the behavior exhibited by the police in *Gutierrez–Rodriguez* would shock even an unusually jaded conscience.

this is correct.[4] Accordingly, we hold that police officers' deliberate indifference to a victim's rights, standing alone, is not a sufficient predicate for a substantive due process claim in a police pursuit case. Rather, in such a case, the plaintiff must also show that the officers' conduct shocks the conscience. Though that benchmark is mandated for creation of danger cases under the fairest reading of *Collins*, we add that it is particularly appropriate to measure police pursuits in that way. Police chases are not only a necessary concomitant of maintaining order in our modern society, but they are also inherently hazardous. By their very nature, they inevitably create some risk of injury to bystanders. Officers must decide the balance between law enforcement and risk to public safety quickly and while under considerable pressure. In such circumstances, permitting the Due Process Clause to serve as a surrogate for state tort law would hamstring the police in their performance of vital duties.

We think, moreover, that this standard is not inconsistent with, but is merely a refinement of, *Landol–Rivera*. As in *Landol–Rivera*, a plaintiff is still required to show the police officers' deliberate indifference to his rights. The plaintiff in *Landol–Rivera* could not clear this hurdle, so we had no occasion to explore whether any further hurdle blocked his path.[5] Today, we move forward and hold that in order for a high-speed police pursuit to intrude upon substantive due process protections, the officers' conduct must not only manifest deliberate indifference to the plaintiff's rights, but must also shock the conscience.

Having clarified the applicable legal standard, we need not tarry. The evidence of record here, taken in the light most salutary to Evans' case, does not satisfy the "shock the conscience" test. The chase was brief in duration, lasting no more than two minutes. It covered about half a mile. The vehicles' speeds never exceeded 50 m.p.h. The officers had good cause to believe that the suspects were trafficking in cocaine. Though Evans is not bereft of talking points—the pursuit occurred in a densely populated residential area at a time when people would likely be ambling about, and the officers did not seriously consider alternatives to hot pursuit—these points, taken most favorably to Evans, add up to no more than possible negligence. Considering the totality of the circumstances, we do not believe that either the officers' decision to pursue the apparent perpetrators of a serious offense or their actions during the chase were so raw as to shock the conscience of a reasonable factfinder.

A comparison of the facts of this case to those of other police pursuit cases in which the officers' behavior has been held not to shock the conscience fortifies our conclusion. For example, *Fagan* involved a lengthy pursuit at speeds up to 80 m.p.h. through a plethora of red lights. *See Fagan*, 22 F.3d at 1299–1300. Similarly, *Temkin*, 945 F.2d at 718, involved a police officer who pursued an individual suspected of stealing $17 worth of gasoline at speeds up to 105 m.p.h. on a narrow, two-lane highway, with the result

**4.** We refuse to follow *Lewis* because we believe that the panel paid insufficient attention both to *Collins* and to the legitimate demands of law enforcement when it asserted, without engaging in any analysis, that "deliberate indifference is always sufficient" to maintain a section 1983 substantive due process action. *Lewis*, 98 F.3d at 440.

**5.** Even if, as Evans urges, *Landol–Rivera* announced a broadly applicable rule to the effect that deliberate indifference is the be-all in creation of danger cases—a proposition that we do not accept—Evans would not be helped. While under ordinary circumstances we would be bound to follow a predecessor panel's lead, *see, e.g., Jusino v. Zayas*, 875 F.2d 986, 993 (1st Cir.1989) (explaining that in a multi-panel circuit, newly constituted panels customarily are

bound by prior panel decisions closely in point), there is a well-recognized exception to the rule for situations in which a panel opinion is undercut by controlling authority, subsequently announced. *See, e.g., Stella v. Kelley*, 63 F.3d 71, 74 (1st Cir.1995) (refusing to follow *Unwin v. Campbell*, 863 F.2d 124 (1st Cir.1988), in light of *Johnson v. Jones*, —— U.S. ——, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995)); *United States v. Bucuvalas*, 909 F.2d 593, 594 (1st Cir.1990) (overruling *United States v. Bosch Morales*, 677 F.2d 1 (1st Cir.1982), in light of *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984)). If *Landol–Rivera* were to be read in the manner urged by Evans, the Supreme Court's subsequent decision in *Collins* would require us to invoke the exception here.

that both the police cruiser and the pursued vehicle struck the plaintiff. The Fourth Circuit held that the officer's conduct, "while disturbing and lacking in judgment," did not transgress the "shock the conscience" standard. *Id.* at 723. The actions of the officers in those cases were far more egregious than the actions of officers Avery and Greene. Although the "shock the conscience" test is not mathematically precise, the imprecision occurs at the edges—and this case, fairly viewed, does not present a close call. .

To sum up, "shock the conscience" is the standard that guides our decision, and the conduct of officers Avery and Greene when measured against that benchmark is manifestly insufficient to support a substantive due process claim. We therefore reject Marie Evans' principal assignment of error.

## III. THE SECTION 1983 CLAIM AGAINST THE CITY

■ Evans next argues that the district court erred in granting summary judgment on her section 1983 claim against the City of Boston. She asserts that the City exhibited deliberate indifference to individual rights both through its failure to monitor police pursuits and through its failure to supervise police officers involved in such pursuits. We need not probe Evans' charge that the City's policies were inadequate in these respects. As we explain below, the fact that Avery and Greene did not violate Evans' constitutional rights means that the City is not liable to her under section 1983.

This result is compelled by the Supreme Court's decision in *City of Los Angeles v. Heller,* 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam). In that case, the plaintiff sued a police officer for making an arrest with excessive force and without probable cause; he also sued the officer's employer, the City of Los Angeles, for promulgating a constitutionally deficient policy in regard to police officers' use of force. The jury found for the officer but against the municipality. The district court entered judgment for the gendarme but overrode the second part of the jury's verdict and dismissed the claim against the city. The court of appeals reversed the order of dismissal but did not disturb the judgment that had been entered in the officer's favor. *See Heller v. Bushey,* 759 F.2d 1371, 1376 (9th Cir.1985). The city then appealed. The Supreme Court reinstated the dismissal, declaring that it had never

> authorize[d] the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.

*Heller,* 475 U.S. at 799, 106 S.Ct. at 1573 (emphasis in original).

While *Heller* provides a durable basis for determining that a municipality cannot be liable under section 1983 for an inadequate public safety policy in a situation where, as here, the officers whose actions actually caused the harm have been exonerated at trial, we note that a panel of the Third Circuit found *Heller* inapplicable in a case much like this one. In *Fagan v. City of Vineland,* 22 F.3d 1283 (3d Cir.1994) (panel opinion), the court stated that "in a substantive due process case arising out of a police pursuit, an underlying constitutional tort can still exist even if no individual police officer violated the Constitution." *Id.* at 1292.[6] The court reasoned that the claim against the officers and the claim against the municipality were based on two different theories: the officers would be liable if their conduct "shocked the conscience," while the city would be liable if its policymakers, acting with deliberate indifference, implemented a policy that encouraged the officers to conduct an unsafe pursuit. *Id.* Evans invites us to adopt this analysis. We decline the invitation because we believe that the *Fagan* panel

---

**6.** When the Third Circuit subsequently reheard *Fagan* en banc, 22 F.3d 1296, it did not review this aspect of the panel opinion.

improperly applied the Supreme Court's teachings.

In *Collins,* the Court emphasized that

> proper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation.

*Collins,* 503 U.S. at 120, 112 S.Ct. at 1066. The *Fagan* panel described the "deliberate indifference" test as a "different theor[y]" for municipal liability, 22 F.3d at 1292, but the "deliberate indifference" test is not an independent theory at all. Rather, deliberate indifference is merely an articulation of the second prong of the *Collins* framework, adapted to "policy and custom" cases. In treating it as a separate theory, the *Fagan* panel ignored the first segment of the framework: the requirement that the plaintiff's harm be caused by a constitutional violation. *See Thompson v. Boggs,* 33 F.3d 847, 859 n. 11 (7th Cir.1994) (rejecting the holding of the *Fagan* panel opinion), *cert. denied,* —— U.S. ——, 115 S.Ct. 1692, 131 L.Ed.2d 556 (1995); *see also Mark v. Borough of Hatboro,* 51 F.3d 1137, 1153 n. 13 (3d Cir.) (questioning the analysis contained in the *Fagan* panel opinion), *cert. denied,* —— U.S. ——, 116 S.Ct. 165, 133 L.Ed.2d 107 (1995). Consequently, we follow *Heller*'s clear rule and hold that the City cannot be held liable absent a constitutional violation by its officers. *See de Feliciano v. de Jesus,* 873 F.2d 447, 449 (1st Cir.), *cert. denied,* 493 U.S. 850, 110 S.Ct. 148, 107 L.Ed.2d 107 (1989).

## IV. THE CROSS–APPEAL

■ The City of Boston appeals the jury's verdicts for loss of consortium in favor of Muriel and Billy Evans (Marie Evans' parents). It advances a single isthmian ground in support of its cross-appeal, arguing that the trial court erred in formulating a jury instruction.

We frame the assignment of error. Over the City's objection, the lower court instructed the jury that state law limited the damages that could be awarded on each claim to $100,000. *See supra* note 1. The City argues that this instruction was unfairly prejudicial inasmuch as it "caused the jury to decide the amount of damages on emotion." The City's premise is that, once the jury knew of the cap, it realized that it could not fully compensate Marie Evans for her extremely severe injuries and therefore decided to circumvent the statutory impediment by remunerating Marie's family as generously as possible.[7]

This asseveration lacks merit. Neither the Massachusetts statute nor the cases discussing it prohibit such an instruction, and the City cites no case from any jurisdiction which holds that in such circumstances a trial court abuses its discretion by informing a jury of a statutory cap on damages.[8] To the contrary, the cases upon which the City relies stand for nothing more than the proposition that a trial court does not abuse its discretion in refusing to inform the jury of such a limit. *See, e.g., Thompson v. Sanford,* 281 Ark. 365, 663 S.W.2d 932, 935 (1984); *State v. Bouras,* 423 N.E.2d 741, 744 (Ind.App.1981).

■ The wisdom of telling a jury about such a statutory limitation is debatable, and we do not recommend the practice. Still, we customarily cede wide discretion to trial courts to fashion jury instructions as they see fit, *see United States v. Houlihan,* 92 F.3d 1271, 1299 n. 31 (1st Cir.1996); *Putnam Resources v. Pateman,* 958 F.2d 448, 462 (1st Cir.1992), and we see no reason to second-guess the court in this instance.

■ This conclusion is reinforced by other incidents of the case at hand. For one thing,

---

**7.** Marie Evans presented testimony indicating that her damages may have totalled as much as $2,000,000. The jury, apparently heedful of the magistrate's instructions concerning the statutory cap, awarded her $100,000. The City has not appealed that verdict.

**8.** This is not a case like *Sasaki v. Class,* 92 F.3d 232 (4th Cir.1996), in which the trial court,

though forbidden by statute from informing the jury of a cap on damages, nonetheless allowed counsel to do so. *See id.* at 235–37 (remanding for a new trial due to a violation of 42 U.S.C. § 1981a(c)(2)). Here, the Massachusetts legislature wrote a statute that is silent on this point, and we decline to speak for it.

the awards to the parents are amply supported by evidence in the record—and almost none of this evidence has been contradicted. For another thing, after properly instructing the jurors on loss of consortium, the magistrate told them that "[t]he claims for Muriel and Billy Evans for loss of consortium are separate claims and each is to be judged separately." Jurors are presumed to follow the court's instructions, *see Houlihan*, 92 F.3d at 1287; *United States v. Rivera–Gomez*, 67 F.3d 993, 999 (1st Cir.1995), and the City has not offered sufficient justification for overcoming this presumption. In the last analysis, the City's claim that the mere mention of the statutory cap inspired the jury to ignore the charge and instead do rough remedial justice is wholly speculative.

## V. CONCLUSION

We need go no further. In a police pursuit case not involving a seizure, the officers may be held liable on the basis of substantive due process only if their actions (whether or not reckless or deliberately indifferent to public safety) shock the conscience. Here, Marie Evans' injuries are not the result of conscience-shocking conduct on the part of officers Avery or Greene. Section 1983 therefore provides no remedy against them (or against the City of Boston, for that matter).[9]

No error appearing, the judgment below will be

*Affirmed.* *All parties shall bear their own costs.*

---

9. We emphasize that we are asked to determine as a matter of federal law only whether Marie Evans has a constitutional right to recover damages under the Due Process Clause. The questions of whether or to what extent she may maintain a suit under state tort law must be answered according to that body of law. The Commonwealth of Massachusetts has chosen to provide only a limited tort remedy, and, though that choice has a very harsh result here, we must recognize the state's suzerainty in its legitimate province. It is not the function of a federal court to force state tort law into unfamiliar contours under the guise of constitutional interpretation.