Abbott et al v. Shumway et al        CV-96-167-B    03/28/97

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**Robert Abbott, et al.**

   v.                                        Civil No. 96-167-B

**David Shumway, et al.**

**MEMORANDUM AND ORDER**

Robert and Janice Abbott commenced this action by filing a complaint in state court alleging that they and their children were injured when defendant David Boyd, a mentally ill ward of the New Hampshire Guardianship and Public Protection Program, left a secure residential facility located in the Abbotts' Chichester neighborhood and "attacked" their home with a shovel.

The Abbotts sued Boyd, the current and former directors of the Mental Health Division of the New Hampshire Department of Health and Human Services (the "Mental Health Division"), two employees of the New Hampshire Guardianship and Public Protection Program ("Guardianship Program"), the current and former presidents of Riverbend Community Mental Health, Inc. ("Riverbend"), a non-profit corporation that allegedly provided Boyd with mental health services, the president and other unidentified employees of Independent Services Network, Inc.

("ISN"), a for-profit corporation that allegedly provided Boyd with security, and the Chichester police chief. In addition to asserting various state law claims, the Abbotts allege that all of the defendants except Boyd and the unnamed ISN employees are liable pursuant to 42 U.S.C.A. § 1983 because they violated the Abbotts' right to substantive due process by failing to prevent Boyd's attack.

The defendants removed the case to federal court and now move to dismiss the federal claims pursuant to Fed. R. Civ. P. 12(b)(6).

## I.   BACKGROUND[1]

### A.   Boyd's Placement in the Community

David Boyd allegedly has a long and unfortunate history of violent mental illness. He is a ward of the Guardianship Program and he has been arrested approximately 44 times in Boscawen and approximately 20 times in Concord. Prior to 1992, Boyd was confined at the New Hampshire State Hospital's Secure Psychiatric Unit.

---

[1]   I draw the background facts from the complaint and describe them in the light most favorable to the plaintiff.

The Guardianship Program purchased a home for Boyd in the Abbotts' Chichester, New Hampshire neighborhood in 1992. State and federal funds were used to remodel the home. The renovations included: (1) securing the second floor so that Boyd could not leave without the permission of his guards; (2) bolting all the movable items located on the second floor to the structure of the building; (3) installing unbreakable glass in the windows of the home; and (4) creating a self-contained living area on the first floor for Boyd's 24-hour per day guards. After completing the renovations, the Mental Health Division, the Guardianship Program, and Riverbend contracted with ISN to provide security services for Boyd at his new residence.

The Abbotts allege that the Division of Mental Health, the Guardianship Program and Riverbend developed the plan to place Boyd outside the traditional mental health system because Boyd was using a disproportionate share of the limited number of bed-days that were available to Riverbend for other clients who also needed to be confined to the State Hospital's secure psychiatric unit.

**B.   The February 20, 1993 Incident**

On February 20, 1993, certain unnamed ISN employees allegedly permitted Boyd to leave his residence. Once outside,

Boyd began walking toward the Abbotts' home. According to the complaint, none of Boyd's guards attempted to stop, restrain, or inhibit him from walking away from the residence.

Janice Abbott and her two children were in their first floor kitchen when Boyd approached their home. After noticing that Boyd was standing on the elevated deck adjacent to the kitchen, Abbott opened the kitchen door to ask Boyd if he needed help. However, she quickly shut and locked the door after an ISN employee who was following Boyd instructed her not to let Boyd into the house. Boyd then became enraged and repeatedly smashed the Abbotts' home with a snow shovel that had been leaning against an outside wall. Using the shovel, Boyd broke the windows in the kitchen door and bent the aluminum door frame. He also repeatedly swung the shovel at the side of the home, breaking two kitchen windows, cutting the vinyl siding, and bending a number of the screws which held the siding in place.

Robert Abbott raced upstairs to see what was wrong after Janice Abbott began screaming in response to Boyd's attack. He instructed his wife to take the kids downstairs and phone the police. Understandably, the Abbotts' children, Joshua and Tasha, were afraid and crying. Robert Abbott then ran back downstairs to get a firearm and ammunition to protect his family in case

4

Boyd broke into the house. When Abbott returned, he saw Boyd stop his attack and walk down the outside stairs, taking the shovel with him. Boyd then went over to the Abbotts' garage and broke several windows in two different garage doors. Boyd eventually left the Abbotts' property and re-entered his home on his own accord.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) requires the court to review the allegations of the complaint in the light most favorable to plaintiffs, accepting all material allegations as true, with dismissal granted only if no set of facts entitles plaintiffs to relief. See, e.g., Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Berniger v. Meadow Green-Wildcat Corp., 945 F.2d 4, 6 (1st Cir. 1991); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). Notwith-standing the liberal requirements of notice pleading and the deferential reading of a litigant's complaint required under Rule 12(b)(6), a district court must ensure that "each general allegation is supported by a specific factual basis." Fleming v. Lind-Waldock & Co., 922 F.2d 20, 23 (1st Cir. 1990). Thus, a district court need not accept subjective characterizations, bald

assertions, or unsubstantiated conclusions.  See Correa-Martinez v. Arrillage-Belendez, 903 F.2d 49, 52-53 (1st Cir. 1990); Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982). Moreover, while "the line between 'facts' and 'conclusions' is often blurred," Dartmouth Review, 889 F.2d at 16, the line must be drawn.  For

> [i]t is only when such conclusions are
> logically compelled, or at least supported,
> by the stated facts, that is, when the
> suggested inference rises to what experience
> indicates is an acceptable level of
> probability that "conclusions" become "facts"
> for pleading purposes.

Id.; see Fleming, 922 F.2d at 24; Correa-Martinez, 903 F.2d at 53.

Care is required in determining the sufficiency of a complaint to insure that "heightened pleading" requirements are invoked only if such requirements are specifically authorized by the Federal Rules of Civil Procedure.  See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993) (comparing Fed. R. Civ. P. 8(a)(2)'s general pleading requirement with the particular pleading requirements of Fed. R. Civ. P. 9(b) and holding that a heightened pleading standard does not apply to civil rights claims).  However, even under the general pleading requirements of Fed. R. Civ. P. 8(a),

6

a complaint will not withstand a motion to dismiss if the plaintiffs have merely recited the elements of the complaint's causes of action in conclusory terms.  Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996); see also Romero-Barello v. Hernandez-Agosto, 75 F.3d 23, 35 (1st Cir. 1996).

## III.  ANALYSIS

The Abbotts claim that the defendants other than Boyd and the unnamed ISN employees violated the Abbotts' right to substantive due process by (i) placing Boyd in the Abbotts' residential neighborhood where he was a danger to others, and (ii) failing to properly supervise the unnamed ISN employees who allegedly allowed Boyd to leave the facility and assault the Abbotts' home.[2]  I examine each contention in turn.[3]

### A.    Improper Placement

---

[2] Counts I and II are based on a supervisory liability theory and Counts III and IV assert that defendants are liable based on their own conduct.  The Abbotts also assert in Count II that defendants violated the Fourth Amendment.  I decline to address this contention in detail as it plainly has no merit.  See Evans v. Avery, 100 F.3d 1033, 1036 (1st Cir. 1996), petition for cert. filed, 65 U.S.L.W. 3611 (U.S. Feb. 28, 1997) (No. 96-1390)(rejecting Fourth Amendment claim where state defendants' conduct was not directed toward the plaintiff).

[3] I assume without deciding that the defendants other than Boyd were all acting under the color of state law when they engaged in the conduct that forms the basis of the plaintiffs' complaint.

A state actor generally will not be held liable under the due process clause for acts of private violence committed by third parties unless either the injured plaintiffs have a "special relationship" with the state defendants, or the defendants are responsible for creating the danger that led to the plaintiffs' injuries.  DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 196-97 (1989); Frances-Colon v. Ramirez, No. 96-1293, 1997 WL 67739 at * 2 (1st Cir. Feb. 24, 1997); Uhlrig v. Harder, 64 F.3d 567, 572 (10th Cir. 1995), cert. denied, 116 S. Ct. 924 (1996).  The "special relationship" exception is inapplicable in this case because the Abbotts were not in state custody or subject to a comparable state-imposed limitation on their liberty when Boyd committed his assault.  See Souza v. Pina, 53 F.3d 423, 426-27 (1st Cir. 1995) (murder suspect not in state custody did not have "special relationship" with state defendants); Monahan v. Dorchester Counseling Ctr., Inc., 961 F.2d 987, 922-23 (1st Cir. 1992) (voluntarily committed mental patient does not have "special relationship" with state defendants).  Thus, the Abbotts' improper placement claim depends upon whether the claim qualifies under the danger creation exception to the general rule of non-liability.

A state official who "affirmatively place[s] the plaintiff

in a position of danger," can be liable for subsequent harm caused by a private actor. <u>Wood v. Ostrander</u>, 879 F.2d 583, 589-90 (9th Cir. 1989) (woman who was raped after a police officer impounded her vehicle and left her stranded in a high crime area at 2:30 a.m. had a triable substantive due process claim); <u>Evans v. Avery</u>, 100 F.3d 1033, 1037-38 (1st Cir. 1996), <u>petition for cert. filed</u>, 65 U.S.L.W. 3611 (U.S. Feb. 28, 1997) (No. 96-1390) (recognizing viability of substantive due process claims in creation of danger cases). However, "[n]ot every negligent, or even willfully reckless state action that renders a person more vulnerable to danger takes on the added character of a violation of the federal constitution." <u>Soto v. Flores</u>, 103 F.3d 1056, 1064 (1st Cir. 1997) (internal quotation and citation omitted)(distinguishing between conventional torts and constitutional violations, as well as between state inaction and action). In this circuit, a successful substantive due process claim premised on a creation of danger theory must assert both that the defendants acted with deliberate indifference[4] to the plaintiffs' constitutional rights and that the defendants' conduct "shocks the conscience". <u>Evans</u>, 100 F.3d at 1038; <u>see</u>

_____

   [4]   The First Circuit has also described this standard as a "reckless or callous indifference" test. <u>See</u> <u>Torres Ramirez v. Bermudez Garcia</u>, 898 F.2d 224, 227 (1st Cir. 1990).

9

also <u>Uhlrig</u>, 64 F.3d at 572.

Deliberate indifference, in the context of a substantive due process claim, is best viewed as a lesser form of intent rather than as a heightened degree of negligence. An intentional violation of a person's constitutional rights occurs if the official desires to cause such a violation or recognizes that his or her conduct is certain to result in such a violation. A deliberately indifferent violation, in contrast, occurs if the official believes (or reasonably should believe) that his or her conduct is very likely (but not certain) to result in such a violation. <u>Germany v. Vance</u>, 868 F.2d 9, 17-18 (1st Cir. 1989); <u>Febus-Rodriguez v. Betancourt-Lebron</u>, 14 F.3d 87, 92 (1st Cir. 1994); <u>Landol-Rivera v. Cruz Cosme</u>, 906 F.2d 791, 796 (1st Cir. 1990); <u>Torres Ramirez v. Bermudez Garcia</u>, 898 F.2d 224, 227 (1st Cir. 1990); <u>Bowen v. City of Manchester</u>, 966 F.2d 13, 16-17 (1st Cir. 1992). I assume without deciding that the Abbotts have alleged sufficient facts to support their claim that defendants acted with deliberate indifference.

The "shock the conscience" standard requires more than deliberate indifference. <u>Evans</u>, 100 F.3d at 1038; <u>Uhlrig</u>, 64 F.3d at 574. Conduct will be held to shock the conscience only in the most egregious of cases where a defendant both disregards

10

a substantial risk of serious injury and engages in conduct that is lacking in the kind of justification that a civilized society would accept as reasonable under the circumstances. See Uhlrig, 64 F.3d at 574. Accordingly, courts applying the standard have declined to recognize substantive due process claims where: (i) state actors allegedly caused a person to commit suicide by encouraging the media to link him with a serial murder investigation, Souza, 53 F.3d at 427; (ii) minors were compelled to attend a sexually explicit AIDS assembly, Brown v. Hot, Sexy and Safer Productions, Inc., 68 F.3d 525, 531 (1st Cir. 1995), cert. denied, 116 S. Ct. 1044 (1996); (iii) the police allegedly caused a pedestrian to be seriously injured by conducting a police chase at 50 miles per hour in a busy neighborhood, Evans, 100 F.3d at 1039; and (iv) state actors allegedly caused a state employee's death by transferring the criminally insane person who murdered her into the general state hospital population, Uhlrig, 64 F.3d at 574-76. While the shock the conscience standard obviously is difficult to satisfy, it reflects the Supreme Court's determination that the due process clause should not serve as a substitute for state tort law. DeShaney, 489 U.S. at 202.

Although the Abbotts allege that the defendants engaged in conduct that shocks the conscience, the facts do not support their conclusory assertion. Without passing judgment on the wisdom of the defendants' alleged decision to place Boyd in a facility in a residential neighborhood, the decision hardly is conscience shocking. The complaint alleges that substantial security enhancements were made to the facility before Boyd was permitted to move in. Moreover, the Abbotts concede that 24-hour per-day guards were hired to ensure that Boyd was not left unattended. Under these circumstances, defendants' decision to place Boyd in the Abbotts' neighborhood does not shock the conscience even when the complaint is liberally construed under the Rule 12(b)(6) standard.[5]

## B.    Supervisory Liability under § 1983

The Abbotts also argue that a number of the defendants are liable for failing to properly supervise the unnamed ISN employees who allegedly allowed Boyd to leave his residence and assault the Abbotts' home. Supervisors can be held liable for a § 1983 claim only based on their own acts and omissions. <u>Sanchez</u>

_____

[5] I reach a similar conclusion with respect to the Abbotts' related claim that the Chichester Police Chief is liable for allowing the placement to occur.

12

v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996). Moreover, a supervisor can be held liable only if (1) a subordinate commits a constitutional violation and (2) the supervisor's action or inaction is affirmatively linked to the behavior of the subordinate in that it could be characterized as "supervisory encouragement, condonation or acquiescence" or "gross negligence amounting to deliberate indifference." Id. (quoting Lipsett v. University of Puerto Rico, 864 F.2d 881, 902 (1st Cir. 1988).

In the present case, the Abbotts offer nothing more than their bald assertion that several of the defendants are liable as supervisors because they "failed to take sufficient remedial action to prevent or mitigate" the unconstitutional acts of their alleged subordinates. Such a vague claim simply is not sufficient to establish the necessary affirmative link between the supervisor's action or inaction and the subordinate's unconstitutional acts.[6] Accordingly, this claim fails as well.

## IV. CONCLUSION

While Boyd's alleged conduct was tragic and unsettling, it

---

[6] Because I determine that the Abbotts have failed to sufficiently allege an "affirmative link" between the defendants' supervisory conduct and the allegedly unconstitutional acts of the unnamed ISN employees, I need not determine whether the subordinates' alleged conduct was unconstitutional.

13

was not caused by state conduct that shocks the conscience. Further, the Abbotts have failed to sufficiently plead a substantive due process claim based on a supervisory liability theory. Accordingly, I grant defendants' motion to dismiss (document no. 15) insofar as it applies to the Abbotts' federal claims (Counts I-IV). Having disposed of the federal claims, I decline to exercise my discretion to retain supplemental jurisdiction over the remaining state claims. These claims are remanded to state court.

SO ORDERED.


_____
Paul Barbadoro
United States District Judge

March 28, 1997

cc:     Scott W. Flood, Esq.
        Lucy C. Hodder, Esq.
        John D. McIntosh, Esq.
        Robert J. Lanney, Esq.
        James C. Wheat, Esq.
        Steven Hengen, Esq.
        Barry M. Scotch, Esq.

14