UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 97-1623

JESSICA L. HAYDEN, NICOLE C. MERRILL AND
COLLEEN M. RHOADS,

Plaintiffs, Appellants,

v.

RICHARD GRAYSON, CHIEF OF POLICE
OF THE TOWN OF LISBON, ET AL.

Defendants, Appellees.

 

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge] 

 

Before

Boudin, Circuit Judge, 

Godbold* and Cyr, Senior Circuit Judges. 

 

Edward M. Van Dorn, Jr., with whom Brad W. Wilder and Van Dorn & 
Cullenberg were on brief for appellants. 
John T. Alexander, with whom Michael Lenehan and Ransmeier & Spellman 
P.C. were on brief for appellees. 

 

January 22, 1998
 

 

*Of the Eleventh Circuit, sitting by designation.

CYR, Senior Circuit Judge. Plaintiffs appeal from a CYR, Senior Circuit Judge.  

district court judgment dismissing their equal protection claims

against the Town of Lisbon, New Hampshire, and its chief of

police, Richard Grayson, for failing to investigate allegations

that their father abused them sexually while they were minors.

We affirm.

I I

BACKGROUND BACKGROUND 

Although the three sisters first lodged these

allegations in 1983, Grayson took no action other than to

misrepresent that the district attorney had declined to

prosecute. Seven years later, after attaining their majority,

plaintiffs discovered Grayson's misrepresentation and took their

allegations to the district attorney. Their father presently is

serving a lengthy prison sentence, following his conviction for

aggravated sexual assault.

Plaintiffs filed the instant action against the Town

and Grayson, in his individual and official capacities, claiming

inter alia that Grayson refrained from investigating their 

allegations either because plaintiffs were female, children, or

victims of domestic sexual abuse, and that such selective law

enforcement violated their individual rights under the Equal

Protection Clause. See U.S. Const. amend XIV; 42 U.S.C. 1983.1 

In due course, the equal protection count against the Town was

 

1It is undisputed that Grayson at all times acted under
color of state law. See 42 U.S.C. 1983. 

2

dismissed for failure to state a claim. See Fed. R. Civ. P. 

12(b)(6). Following discovery, defendant Grayson was awarded

summary judgment on the individual-capacity claim because

plaintiffs had failed to adduce sufficient evidence that he

intended to discriminate due to their membership in any of the

three classes alleged in their complaint. The district court

thereafter denied plaintiffs' postjudgment motion for

reconsideration. See Fed. R. Civ. P. 59.  

II II

DISCUSSION DISCUSSION 

A. The Equal Protection Claim Against Grayson2 A. The Equal Protection Claim Against Grayson 

The Fourteenth Amendment mandates that no State "deny

to any person within its jurisdiction the equal protection of the

laws." U.S. Const. amend XIV. Thus, although there is no

constitutional right to police protection, State executive and

law enforcement officials may not "selectively deny . . .

protective services to certain disfavored minorities." DeShaney 

v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 197 n.3 

(1989).

Plaintiffs rely on City of Cleburne v. Cleburne Living 

Ctr., 473 U.S. 432 (1985), for their contention that the district 

court should not have applied the equal protection test governing

 

2After examining all competent evidence in the light most
favorable to the party opposing summary judgment, we are required
to make a de novo determination as to whether a trialworthy issue 
remained or the moving party was entitled to judgment as a matter
of law. See Dominique v. Weld, 73 F.3d 1156, 1158 (1st Cir. 
1996). 

3

race and gender classifications, which necessitated that

plaintiffs show that Grayson acted with discriminatory intent.

Instead, plaintiffs argue, in cases involving less invidious but

nonetheless arbitrary classifications, such as child victims of

domestic sexual abuse, Cleburne simply envisions that plaintiffs 

prove that the defendant's decision lacked a "rational basis,"

without regard to any discriminatory intent.3

Plaintiffs misconstrue the Cleburne decision. There 

the Supreme Court expressly noted the finding made by the

district court that the municipality's principal reason for

denying the requested zoning permit had been "that the residents

of the [plaintiff] home would be persons who are mentally

retarded," id. at 437, a finding which was never challenged on 

appeal. Thus, it was only because the city's discriminatory

motive had been established ab initio that the Court addressed 

whether the city need demonstrate a "compelling" or "important"

state interest criteria theretofore reserved for race and

gender discrimination or need simply articulate a "rational

basis" for its decision. Id. at 440-41. Accordingly, Cleburne 

did not hold that no threshold proof of intent to discriminate is

 

3The Equal Protection Clause safeguards not merely against
such invidious classifications as race, gender and religion, but
any arbitrary classification of persons for unfavorable
governmental treatment. Cf. Wayte v. United States, 470 U.S. 
598, 608 (1985) (noting, in relation to selective prosecution
cases, that "the decision to prosecute may not be 'deliberately
based upon an unjustifiable standard such as race, religion, or
other arbitrary classification'") (emphasis added; citations and 
internal quotation marks omitted).

4

required in cases involving less invidious arbitrary

classifications.4 

The motivation underlying a municipal decision is not

always so apparent as in Cleburne, of course, especially if the 

challenged decision does not expressly single out a particular

class of persons for disadvantageous treatment. Even in such

instances, however, members of the plaintiff class quite

understandably may consider it no mere coincidence that a

facially neutral decision causes a disproportionately unfavorable

impact on their particular class. Nevertheless, even evidence of

a widely disproportionate impact on the plaintiff class normally

is not enough, standing alone, to establish an equal protection

violation. See, e.g., Personnel Adm'r of Mass. v. Feeney, 442 

U.S. 256, 274-75 (1979) (upholding veteran's preference in civil

service hiring, although vast majority of veterans hired were

male). Rather, plaintiffs must adduce competent evidence of

"purposeful discrimination." Washington v. Davis, 426 U.S. 229, 

243-44 (1976); Soto v. Flores, 103 F.3d 1056, 1067 (1st Cir.), 

cert. denied, 118 S. Ct. 71 (1997). 

The burden is an onerous one: "'Discriminatory

purpose' . . . implies that the decisionmaker . . . selected or
 

4The other case relied upon by plaintiffs in this regard is
to the same effect. See Navarro v. Block, 72 F.3d 712, 715-16 
(9th Cir. 1996) (vacating summary judgment for County on equal
protection claim because there existed a trialworthy issue as to
whether County policy according different treatment to domestic
and nondomestic violence had a "rational basis," but only after 
the County had conceded, arguendo on appeal, "that it had a 
policy of affording victims of domestic violence less police
protection").

5

reaffirmed a course of action at least in part 'because of,' not 

merely 'in spite of,' its adverse effects upon an identifiable

group." Feeney, 442 U.S. at 279 (emphasis added; citation 

omitted); Soto, 103 F.3d at 1067. Thus, unless these plaintiffs 

established the requisite discriminatory intent, their equal

protection claim cannot succeed even assuming the Grayson

decision not to investigate lacked a "rational basis." See 

Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 

429 U.S. 252, 265 (1977); Semple v. City of Moundsville, 963 F. 

Supp. 1416, 1433 (N.D. W. Va. 1997).

Plaintiffs claim that the district court disregarded

competent evidence that Grayson harbored "archaic stereotypes"

regarding female-child sexual abuse in the home and singled out

its victims for unfavorable treatment in determining whether to

investigate. The record does not support their contention,

however.5

At no time did Grayson indicate to anyone that he would

not investigate allegations of child sexual abuse in the home
 

5Plaintiffs adduced no evidence that Grayson's reluctance to
pursue criminal investigations was based on their gender. On the
contrary, plaintiffs proffered evidence that Grayson failed to
investigate a 1990 allegation that a 12-year-old boy had been
sexually molested by his grandfather. Nor did plaintiffs adduce
statistical or other evidence relating to whether females
comprise a majority of (1) sexual abuse victims; (2) domestic
sexual abuse victims; (3) sexually abused minors; or (4) minors
sexually abused in the home. Furthermore, Officer Boutin
attested that though Grayson often did not pursue allegations of
crimes committed against children if a nonoffending adult family
member urged him not to do so, this "policy" did not depend on
whether the victims were male or female. See infra note 8. 
Given its serious deficiencies, the gender classification claim
quite properly was rejected by the district court.

6

because he thought the victims were undeserving of equal law-

enforcement protection. Instead, he explained to a fellow

officer that he had refrained from investigating plaintiffs'

allegations at their mother's request.6 Another police officer

confirmed that it was Grayson's policy not to intervene where a

family member (e.g., nonabusive parent or spouse) requested that 

there be no investigation.

Plaintiffs essentially claim, nonetheless, that their

evidence supported, respectively, rational inferences that

Grayson intended to treat all domestic crime differently from

nondomestic crime, all crimes against children differently from

crimes against adults, and all sexual abuse crimes differently

from nonsexual crimes.7 Once again the evidence does not bear

out their claim.

Plaintiffs' proffer disclosed that the nonintervention

policy attributed to Grayson may have been much broader than

plaintiffs allow, in that it applied not merely to domestic child

sexual abuse, but to other crimes in circumstances where general

concerns for family integrity and family privacy predominated.8
 

6Specifically, the mother told Grayson that "she did not
want the girls involved in a prosecution." Plaintiffs have not
contested this evidence. 

7The district court reserved the question whether the
evidence relating to Grayson's own statements would be
admissible. See Fed. R. Evid. 801(d)(2) (admission by party- 
opponent).

8In the portion of Officer Boutin's deposition proffered
below, the inquiry is ambiguously phrased by plaintiffs in terms
of how Grayson acted "in these kinds of cases" compared to "other
[] more conventional kinds of crimes," without particularizing

7

Thus, their proffer may be seen to belie their contention that

Grayson sought to discriminate against them because of, rather 

than in spite of, their status as victims of child sexual abuse 

in the home. See Feeney, 422 U.S. at 279. Far from 

demonstrating general condonation of child sexual abuse in the

home, therefore, the proffer simply supported a reasonable

inference that Grayson would investigate virtually any allegation 

of crime absent an appropriate request from a nonoffending spouse 

to refrain from intervention in circumstances where legitimate,

competing family interests were thought to predominate.

Accordingly, although the evidence may well have demonstrated

that the Grayson nonintervention policy had a disproportionate

adverse impact in cases involving allegations relating to the

various victim classes in which plaintiffs claimed membership, it

did not demonstrate that Grayson harbored a discriminatory animus

toward those victim classes. Id. at 274 (upholding veteran's 

 

any characteristic of these alleged crimes which was 
unconventional in their view (e.g., domestic, sexual abuse, or 
crimes against children or female victims), or which triggered
the Grayson nonintervention policy. Perhaps for this very
reason, then, Officer Boutin ambiguously responded that the
police "took into [account] what the mother had to say or the 
victim's rights were, I mean, emotions were," and "if the 
family's wishes were that it didn't get prosecuted, then it 
didn't." Although Boutin allowed that the Grayson
nonintervention policy would apply to crimes against children, at
no time did he state that it applied exclusively to such crimes.
These unaddressed ambiguities plainly invited a rational
inference that the challenged nonintervention policy was
predicated on a generalized concern for family integrity and
privacy, which would be activated, for example, at the instance
of a nonoffending spouse even though the allegations may have
related to nonsexual criminal activity directed against an adult
family member.

8

preference in civil service hiring, even though vast majority of

veteran hirees were male).

Similarly, plaintiffs presented evidence that Grayson,

on two other occasions, failed to investigate allegations of

child sexual abuse in the home. Once again, however, there was

no evidence that Grayson was motivated by a discriminatory

animus, as distinguished from a neutral nonintervention policy.

Moreover, Grayson proffered undisputed evidence that he had

investigated at least two other domestic child sexual abuse

cases, as well as eight nondomestic child sexual abuse cases.

Cf. Willhauck v. Halpin, 953 F.2d 689, 712 (1st Cir. 1991) (in 

analogous context of equal protection claim founded on selective

prosecution, "[i]t must be shown that others similarly situated

have not been prosecuted and that the decision to prosecute has

been motivated by an impermissible reason").

Finally, in an ironic twist, the discriminatory focus

essential to plaintiffs' equal protection claims was irredeemably

blurred by their proffer that the Grayson nonintervention policy

extended well beyond domestic child sexual abuse cases (e.g., to 

DWI and vandalism), and may even have been due to Grayson's

dishonesty, chronic lassitude, alcohol abuse, or desire to wage

personal vendettas against particular individuals rather than

groups. See New Burnham Prairie Homes, Inc. v. Village of 

Burnham, 910 F.2d 1474, 1481 (7th Cir. 1990) (noting that 

"[d]iscrimination based merely on individual, rather than group,

reasons will not suffice" to establish equal protection

9

violation). That is to say, although their scattershot approach

might enable a rational inference that Grayson was a poor police

chief, it cannot sustain a nonspeculative inference that he

failed to investigate these allegations because plaintiffs were 

children who had been sexually abused, or because plaintiffs had 

been sexually abused in the home. See Soto, 103 F.3d at 1072 

("Whether this deplorable scenario is actionable under Puerto

Rican law we leave, as we must, to others.").9

B. The Equal Protection Claim Against the Municipality B. The Equal Protection Claim Against the Municipality 

The district court dismissed the equal protection count

against the Town for failure to state a claim. See Fed. R. Civ. 

P. 12(b)(6). Eighteen months later, plaintiffs moved to

reinstate and amend the claim, see Fed. R. Civ. P. 15, to allege 

that the Town should be held liable either because Grayson was

the municipal official who instituted the official "policy"
 

9The district court denied plaintiffs' postjudgment motion
for reconsideration, see Fed. R. Civ. P. 59, because their "new" 
evidence of discriminatory intent had been available at summary
judgment. Plaintiffs respond that Grayson's motion for summary
judgment failed to put them on adequate notice that he disputed
their allegations of discriminatory intent. We review the Rule
59 decision only for manifest abuse of discretion. See Vasapolli 
v. Rostoff, 39 F.3d 27, 36 (1st Cir. 1994). 
The Grayson motion could not have been more explicit:
"Defendant Grayson denies any intent to discriminate against the
plaintiffs on any basis." Further, "[t]he plaintiffs have
produced no evidence suggesting that defendant Grayson wanted to
harm them because they were women, or because they were minors,
or because they were alleged victims of sexual assaults." True,
plaintiffs' default may flow from their misreading of Cleburne. 
See supra pp. 3-4. Nevertheless, "[Rule 59] does not provide a 
vehicle for a party to undo its own procedural failures, and it
certainly does not allow a party to introduce new evidence or
advance arguments that could and should have been presented to
the district court prior to the judgment." Aybar v. Crispin- 
Reyes, 118 F.3d 10, 16 (1st Cir. 1997).  

10

against providing law-enforcement protection to child victims of

sexual abuse in the home, see Monell v. Department of Social 

Servs. of New York, 436 U.S. 658, 694-95 (1978), or because the 

Town failed to train Grayson adequately to deal with domestic

child sexual abuse, which constituted "much" or "most" of the

crime in the community.

The district court denied the motion to amend, on the

ground that its earlier Rule 12(b)(6) dismissal amounted to a

decision "on the merits" and, accordingly, the law of the case.10

Even assuming the rationale for the instant decision were to be

found infirm, see Griggs v. Hinds Junior College, 563 F.2d 179, 

180 (5th Cir. 1977) (noting that Rule 15 amendment is "especially

appropriate [] . . . when the trial court has dismissed the

complaint for failure to state a claim"); see also Dussouy v. 

Gulf Coast Inv. Corp., 660 F.2d 594, 598 n.2 (5th Cir. 1981), we 

would affirm on the ground that the proposed amendment would have

been futile. See Levy v. FDIC, 7 F.3d 1054, 1056 (1st Cir. 

1993).

Rule 15 permits the trial court to deny leave to file

an amended complaint which would be subject to immediate

dismissal under Rule 12(b)(6) for failure to state a viable claim

for relief. See Foman v. Davis, 371 U.S. 178, 182 (1962); Mills 

v. State of Me., 118 F.3d 37, 55 (1st Cir. 1997). The Town 

cannot be held vicariously liable in an action under section 1983

 

10We review the Rule 15 decision for abuse of discretion.
RTC v. Gold, 30 F.3d 251, 253 (1st Cir. 1994). 

11

unless its official policy or custom was the "moving force"

behind the alleged violation of constitutional rights. See 

Monell, 436 U.S. at 694.11 Normally, therefore, a municipality 

cannot be held liable unless its agent actually violated the

victim's constitutional rights. See City of Los Angeles v. 

Heller, 475 U.S. 796, 799 (1986) ("If a person has suffered no 

constitutional injury at the hands of [any] individual police

officer, the fact that the departmental regulations might have

authorized [unconstitutional action] is quite beside the

point.").

Plaintiffs simply allege that the Town is liable under

section 1983 because Grayson established an official Town policy

or custom of selective law enforcement which in turn caused them

injury.12 Since their predicate claim against Grayson fails,

however, see supra Section II.A, so must their contention that 

any such discriminatory Town policy or custom existed.

Alternatively, of course, the Town could be held liable

under section 1983 were it to appear that the injury to

plaintiffs was caused by the Town's failure to train Grayson. 

The liability criteria for "failure to train" claims are

exceptionally stringent, however. See City of Canton v. Harris, 

489 U.S. 378, 388-89, 391 (1989).
 

11Municipal customs, for 1983 purposes, are "such
practices of state officials ... [as are] so permanent and well
settled as to constitute a 'custom or usage' with the force of
law." Id. at 691. 

12We assume arguendo that Grayson, as police chief, was a 
Town policymaker with respect to law enforcement.

12

Only if the failure to train "amounts to deliberate 

indifference to the rights of persons with whom the police come 

into contact," and is "closely related" to, or "the moving force"

behind, the constitutional injury, can the claim against the

municipality prevail. Id. (emphasis added). For this 

"deliberate or conscious choice" to have been established,

plaintiffs needed to present evidence that (1) the Town knew when

it hired Grayson that the risk of future equal protection

violations arising and recurring in domestic child sexual abuse

cases was "so obvious" that its failure to train him therein

likely would result in continued violations; or (2) even though 

the initial risk of recurring constitutional violations was not

"so obvious," the Town subsequently learned of a serious

recurrence, yet took no action to provide the necessary training.

Id. at 390 & n.10; see also id. at 396 (O'Connor, J., concurring 

in part).13
 

13We have considerable doubt whether the failure-to-train 13
claim survived either the dismissal of the 1983 claim against
Grayson, individually, see supra Section II.A, or the Monell 
policy-based claims against the Town and Grayson, in his official
capacity, supra. If Grayson never violated plaintiffs' 
constitutional rights in the first instance, it is difficult to
see how a failure to train him could have caused any 
"constitutional injury" to plaintiffs. Compare Evans v. Avery, 
100 F.3d 1033, 1040 (1st Cir. 1997) (affirming dismissal of 
1983 substantive-due-process claim against City where its agents
were found not to have violated plaintiff's constitutional
rights) (citing Heller, 475 U.S. at 799), with Simmons v. City of  
Philadelphia, 947 F.2d 1042, 1063 (3d Cir. 1991) (holding that 
city policymakers, who owed an independent duty to pretrial
detainees, were individually liable under 1983 for prisoner
suicide, even though factfinder determined that the turnkey had
not violated prisoner's constitutional rights); de Feliciano v. 
de Jesus, 873 F.2d 447, 450 (1st Cir. 1989) ("There may well be a 
basis for an agency's liability other than the conduct of the

13

To begin with, plaintiffs merely allege that "Lisbon is 

a high crime area in northern Grafton County [and] that much or

most of the crime committed in northern Grafton County involves 

domestic violence and sexual abuse." (Emphasis added.) There is

no allegation that these circumstances obtained in 1975, however,

when Grayson became the police chief. No less importantly, even

assuming similar circumstances prevailed in 1975, the need to

train Grayson was not "so obvious, [nor] the [alleged] inadequacy

[of the training] so likely to result in the violation of

constitutional rights, that the [Town] can reasonably be said to

have been deliberately indifferent to the need [for training]."

City of Canton, 489 U.S. at 390. 

It bears reminding that the gravamen of the amended

complaint is not that Grayson did not adequately investigate

these allegations, but that he purposely chose not to investigate

them at all. It is reasonable to observe, therefore, that

whatever relevant training the Town failed to give Grayson would 

not have entailed specialized law-enforcement investigatory

skills, but simply the commonplace understanding that police

officers may not deny law-enforcement protection based simply on

 

individual defendants that the jury exonerated."). See generally 
Barbara Kritchevsky, Making Sense of State of Mind: Determining 
Liability in Section 1983 Municipal Liability Litigation, 60 Geo. 
Wash. L. Rev. 417, 445-73 (1992) (summarizing conflicting case
law). Nevertheless, assuming arguendo that dismissal of the 
individual-capacity claim against Grayson would not necessitate
dismissal of the failure-to-train claim against the Town, the
proffered amendment would still be futile due to the stringent
definition of "deliberate indifference" prescribed in City of 
Canton. 

14

their arbitrary classifications of various groups of crime

victims.

Thus, the amended complaint asserted no sufficient

basis for concluding that Town policymakers reasonably should

have anticipated that a new police chief would need specialized

instruction in so rudimentary a law-enforcement responsibility,

nor that the Town had been put on notice that such equal-

protection violations were routine occurrences in domestic child

sexual abuse cases, either locally or elsewhere. Rather, unlike

many other law-enforcement responsibilities, cf., e.g., id. at 

390 & n.10 (noting that it might be considered "obvious" that

armed police officers assigned to arrest fleeing felons would

need instruction regarding constitutional limitations on proper

use of deadly force), the Equal Protection Clause bar against

arbitrary law enforcement is neither obscure nor problematic of

application.14
 

14City of Canton requires not only deliberate indifference 14 
but that the alleged failure to train be shown to have been the
"closely related" cause of the constitutional injury. Id. at 
390-91. As Grayson was a policymaking official, with discretion
in law enforcement matters, plaintiffs were required to prove
that he acted with "purposeful discrimination." Yet there has 
been no showing that whatever training was not provided to
Grayson could have thwarted any such purposeful discrimination.
Whereas law enforcement training might inform an officer about
the proper methods to be used in mediating and diffusing crimes
of domestic violence, for example, it does not necessarily follow
that an officer intent on discriminating against a particular 
class of crime victims would be deterred from doing so by
"enlightenment" training, especially given the contraindications
implicit in plaintiffs' other evidence that the challenged
decisionmaking by Grayson resulted from alcohol abuse, lassitude,
or personal animosity toward individuals. See Angel v. City of 
Fairfield, 793 F.2d 737, 739 (5th Cir. 1986) ("Here, Angel has 
failed to allege how the failure to train resulted in the denial

15

Finally, plaintiffs have not alleged that the Town was

ever placed on notice that Grayson, after he was appointed in 

1975, routinely violated the equal protection rights of citizens

by engaging in selective and arbitrary law enforcement. See 

Swain v. Spinney, 117 F.3d 1, 11 (1st Cir. 1997) (lack of notice 

of prior constitutional violations defeats failure-to-train

claim). Accordingly, we conclude that the proposed amendment to

the complaint would have been futile.15

Needless to say, our conclusion represents no

endorsement of the conduct with which Grayson is charged in the

complaint. It would be dereliction of duty for a police chief to

turn over to private parties the decision whether a serious

offense should be pursued and it is hard to imagine what might

justify telling a complainant falsely that the prosecutor would

have no interest in the complaint. Nevertheless, not every form

of misconduct is a constitutional violation most wrongs find

their remedy under state law and our present holding is simply

that the allegations made in the complaint do not properly assert

a violation of the Equal Protection Clause.

Affirmed. Affirmed. 

 

of his right to equal protection of the laws.").

15As no "federal question" claims remain, we also affirm the
district court's discretionary decision not to exercise its
supplemental jurisdiction over plaintiffs' state-law claims for
negligence and intentional infliction of emotional distress
against the Town and Grayson. See 28 U.S.C. 1367(c)(3). 

16